UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICKIE FERGUSON,

                Plaintiff,                     Case No. 2:23-cv-11094

v.                                       Honorable Susan K. DeClercq
                                                United States District Judge

MARYSVILLE HOUSING
COMMISSION,

                Defendant.

_____/

**OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 23) AND DISMISSING WITH PREJUDICE COUNT II OF PLAINTIFF'S COMPLAINT**

For nearly 12 years, Plaintiff Vickie Ferguson worked as a building monitor at Vicksburg Hall, an apartment building owned by the Marysville Housing Commission (MHC). Although Ferguson never received wages for her work, MHC provided her a fixed rent of $50 per month and covered her utility bills while she was building monitor.

Shortly after Ferguson left Vicksburg Hall, she sued MHC, alleging that it failed to pay her on-call and overtime wages and retaliated against her for inquiring with government agencies about whether she should have been paid for her work. But, according to MHC, Ferguson was never an employee entitled to compensation. Rather, MHC argues Ferguson was a volunteer who took her responsibilities above

and beyond what anyone at MHC asked of her. MHC seeks summary judgment on both Ferguson's claims.

As explained below, MHC's motion will be granted as it relates to Ferguson's retaliation claim. But it will be denied as it relates to her failure-to-compensate claim because Ferguson was an employee under the FLSA framework and there are questions of fact remaining as to her on-call duties.

## I. BACKGROUND

In October 2009, Ferguson moved into a one-bedroom unit in Vicksburg Hall, a 132-apartment complex "operated by the [MHC] in partnership with the U.S. Department of Housing and Urban Development" (HUD) which provides low-cost housing to "qualifying elderly persons and persons with disabilities." MARYSVILLE HOUSING COMMISSION, https://marysvillehousing.org/ [https://perma.cc/54UA-8ZMH]; *see also* ECF No. 23-6 at PageID.148. For two years, she paid approximately $300/month in rent. *Id.* at PageID.150, 158.

That all changed in 2011 when Wayne Pyden—then the executive director of Marysville Housing Commission—asked Ferguson to be the building monitor for Vicksburg Hall. ECF No. 23-6 at PageID.150. Ferguson agreed, in exchange for (1) a fixed rate of $25/month rent to lease a two-bedroom unit at Vicksburg Hall; (2) MHC's agreement to pay for all of her utilities; and (3) MHC providing Ferguson with a cell phone. ECF No. 23-6 at PageID.158, 161; *see also* ECF No. 23-8 at

PageID.185.

To that end, both Ferguson and Pyden executed an "Attachment" to the lease agreement which set forth "additional lease requirements" ("the Agreement"). ECF No. 23-8 at PageID.185. The Agreement required Ferguson, as building monitor, to "provide[] supervision of Vicksburg Halls after regular business hours and on weekends and holidays." *Id.* The Agreement noted the building monitor position was "an independent, at-will contractor" position that reported directly to the executive director. *Id.* It then provided a list of seven building-monitor duties that was "not meant to be all inclusive:"

1. Attend to lockouts.
2. Monitor emergency call panel, fire alarm panel and all mechanical systems.
3. Respond to emergency requests and assist residents in emergency situations.
4. Perform all necessary tasks contributing to building security and safety.
5. Participation in resident activities is suggested.
6. Set an example for all residents by following policies, procedures, etc.
7. All other related duties.

*Id.*

Ferguson testified that in addition to the written agreement, Pyden told her that while she was building monitor, she should proactively patrol the hallways and help residents resolve any problems they had after hours. ECF No. 23-6 at PageID.154–55. Ferguson also testified that it was her understanding in 2011—

under the Agreement and Pyden's statements to her—that she was "required" to be present at Vicksburg Hall during evenings, weekends, and holidays. *Id.* at PageID.156. Indeed, Ferguson never left Vicksburg Hall during evenings, weekends, or holidays for over a decade. *Id.*

In 2014, the Port Huron Housing Commission (PHHC) entered into a "consortium management agreement" with MHC under which PHHC would manage MHC and administer all MHC programs. ECF No. 23-2 at PageID.106. As a result of this new agreement, PHHC began managing Vicksburg Hall under the leadership of James Dewey, the executive director of PHHC.[1] *Id.*

During the transition period, Ferguson's building-monitor benefit of fixed rent increased from $25/month to $50/month. *See* ECF No. 23-6 at PageID.158. But otherwise, neither Party provided any evidence that any discussion or review of Ferguson's building monitor position or duties occurred when PHHC began managing Vicksburg Hall in 2014.[2] Indeed, it appears the April 2011 Agreement, *see* ECF No. 23-8, remained in effect.

---

[1] It is not clear from the evidence submitted by the Parties whether the executive director of MHC, Wayne Pyden, left MHC at this point or if he continued as the executive director of MHC.

[2] It was not until 2022 that Dewey and PHHC program operations manager Pamela Moses reviewed the April 2011 Agreement and realized it included duties that were "different" from other building monitor positions. *See* ECF No. 23-2 at PageID.110–11; *see also* ECF No. 23-3 at PageID.120 (noting that there were some things in the 2011 Agreement that went beyond what a building monitor should be doing).

Nevertheless, it appears many PHHC employees had a fundamentally different understanding of the building monitor position than Ferguson and Pyden. Dewey understood—based on his experience with building monitors at PHHC—that building monitors were responsible *only* for (1) assisting residents with lockouts; (2) responding to pull-cord alerts;[3] and (3) communicating with emergency services when they were called to Vicksburg Hall. ECF No. 23-2 at PageID.107.

Yet Ferguson continued to do more than that. According to Ferguson's activity logs, she handled not only lockouts and pull-cord alerts, but residents' "family issues," wellness checks, disputes involving residents (some of which required police involvement), package deliveries, reports of unusual odors or smoke, reports of gunfire, and maintenance issues. *See* ECF No. 23-9. Indeed, Vicksburg Hall housekeeper Tina Herriman noted that Ferguson "did everything." ECF No. 24-4 at PageID.313.

Things began to change for Ferguson in May 2022 when Pamela Moses, newly promoted to the role of PHHC programs operations manager, informed Ferguson that her rent would be increasing soon. *See* ECF No. 23-3 at PageID.119. Moses testified that she explained to Ferguson that the arrangement made in 2011 was not in compliance with HUD regulations, and that she should not have been

---

[3] Pull-cord alerts are alerts that display on the emergency control panel when a resident pulls an emergency cord in their room.

receiving the $50 fixed rent for being building monitor, but instead only a monthly $200 stipend. *Id.* at PageID.119–20.

Around this same time, Ferguson filed a complaint with the Michigan Department of Labor in which she complained about having never received wages. ECF No. 23-6 at PageID.146. The Michigan DOL directed Ferguson to file a complaint with the federal department of labor, which she did online in mid-2022. *Id.* at PageID.146–47. The U.S. Department of Labor responded soon after, recommending that Ferguson find an independent attorney. *Id.* at PageID.147. Importantly, it does not appear the US DOL ever opened an investigation into Ferguson's complaint or contacted MHC or PHHC about it. Indeed, Dewey testified he had no knowledge of any formal complaints filed by Ferguson. ECF No. 23-2 at PageID.112. And Ferguson does not recall if she told anyone about her complaints. ECF No. 23-6 at PageID.147.

In December 2022, Moses and the property manager met with Ferguson to inform her that her rent would be increasing to $950 per month plus a $200 building-monitor stipend because "[i]t should have always been" that way, and Ferguson should have never received a $50 fixed-rent rate in exchange for her work as the building monitor. *Id.* at PageID.162; *see also* ECF No. 23-3 at PageID.120.

Ferguson refused to sign the new lease agreement with the increased rent and moved out of Vicksburg Hall in April 2023. *See* ECF No. 23-6 at PageID.161. After

Ferguson left, PHHC staff members took over the on-call cell phone Ferguson had previously been responsible for, and the pull-cord alert system was changed to notify emergency services directly, doing away with the need for anyone at Vicksburg Hall to contact emergency services. ECF No. 23-4 at PageID.128, 131.

The next month, Ferguson sued MHC under the FLSA, alleging it failed to pay her wages as required under the Act and that it retaliated against her by increasing her rent after she filed complaints with state and federal departments of labor. ECF No. 1.

MHC filed a motion for summary judgment, arguing Ferguson was not an employee entitled to compensation, but a volunteer, so the FLSA did not apply. ECF No. 23. And even if Ferguson *was* a volunteer, MHC argues, she was not entitled to be compensated for her on-call time and any remaining due wages were offset by the rent discount she received for twelve years. *Id.* Ferguson opposes MHC's motion, arguing she was an employee under the FLSA framework and that she is entitled to wages for her on-call time. ECF No. 24.

## II. LEGAL STANDARDS

### A. Summary Judgment

To prevail on summary judgment, movants must identify record evidence showing that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986);

FED. R. CIV. P. 56(a). If the movant makes such a showing, then the burden shifts to the nonmovant to identify specific facts that create "a genuine issue for trial," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted), which requires more than a mere "scintilla of evidence," *id.* at 251, and more than "metaphysical doubt," *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). All inferences must be reasonable, logical, and drawn in the nonmovant's favor to determine whether any party must prevail as a matter of law. *See Anderson*, 477 U.S. at 251–52.

### B. Fair Labor Standards Act

Under the FLSA, employers must pay their employees a minimum wage. 29 U.S.C. § 206(a); *see also* 29 U.S.C. § 215(a)(2). "Congress passed the FLSA with broad remedial intent." *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015) (citing *Powell v. U.S. Cartridge Co.*, 339 U.S. 497, 509–11 (1950)). In doing so, Congress intended the FLSA to "correct labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." *Id.* (internal quotations omitted) (quoting *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984)). Accordingly, "[c]ourts interpreting the FLSA must consider Congress's 'remedial purpose.'" *Id.*

# III. ANALYSIS

## A. Count I: FLSA Violation

Ferguson first alleges that MHC violated the FLSA by not paying her wages for the regular and overtime hours she worked as building monitor. ECF No. 1 at PageID.5; *see also* 29 U.S.C. §§ 206–207. MHC seeks summary judgment on this count, arguing Ferguson was not an employee entitled to compensation, and even if she was, she is not entitled to payment for her on-call time so any wages she is due would be significantly offset by the rent benefit she received. ECF No. 23 at PageID.86–98. Each argument will be addressed in turn.

### 1. Employee Status

MHC first argues that it is entitled to summary judgment because Ferguson was not an employee, but rather a volunteer.[4] ECF No. 23 at PageID.87–88. Ferguson opposes this characterization, arguing that the economic reality of the arrangement demonstrates she meets the definition of an "employee" under the FLSA. ECF No. 24 at PageID.256–63.

#### a. Standard

Whether a FLSA plaintiff is an employee or something else is a question district courts "usually should resolve . . . as a matter of law." *Werner v. Bell Fam.*

---

[4] At no point it its Motion or Reply does MHC argue that Ferguson was an independent contractor. *See generally* ECF Nos. 23; 25.

*Med. Ctr., Inc.*, 529 F. App'x 541, 543 (6th Cir. 2013) (citations omitted). Yet the Sixth Circuit has "recognized that material factual disputes regarding employment status may require resolution by a factfinder in close cases." *Id.* (collecting cases); *see also Keller*, 781 F.3d at 816 ("Summary judgment for the defendant is not appropriate when a factfinder could reasonably find that a FLSA plaintiff was an employee.").

Although the FLSA "define[s] the terms 'employee,' 'employer,' and 'employ,' the definitions are exceedingly broad and generally unhelpful." *Solis v. Laurelbrook Sanitarium and Sch., Inc.*, 642 F.3d 518, 522 (6th Cir. 2011) (citations omitted). "Whether an employment relationship exists under a given set of circumstances 'is not fixed by labels that parties may attach to their relationship nor by common law categories nor by classifications under other statutes.'" *Id.* (quoting *Powell*, 339 U.S. at 528).

Instead, "it is the 'economic reality' of the relationship between parties that determines whether their relationship is one of employment or something else." *Id.* (citing *Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 301 (1985)); *see also Acosta v. Off Duty Police Servs.*, Inc., 915 F.3d 1050, 1055 (6th Cir. 2019) ("To determine whether a worker fits within this expansive definition, 'we must look to see whether [the] worker, even when labeled as an "independent contractor," is, as a matter of "economic reality," an employee.'" (alteration in original) (quoting

*Keller*, 781 F.3d at 804)); *see also Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947)) (finding the employment relationship "is to be determined on a case-by-case basis upon the circumstances of the whole business activity.").

b. Analysis

The FLSA is clear that a person is not an "employee" if they "volunteer[] to perform services for a public agency" and receive no compensation or receive only "expenses, reasonable benefits, or a nominal fee to perform the services for which [they] volunteered." 29 U.S.C. § 203(e)(4); *see also* 29 C.F.R. § 553.101 (defining "volunteer" as a person "who performs hours of service for a public agency for civic, charitable, or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered."). In addition, "[a]n individual who volunteers to provide periodic services on a year round basis may receive a nominal monthly or annual stipend or fee without losing volunteer status." 29 C.F.R. § 553.106(e).

In cases such as this one, where the Parties dispute whether a person was an employee or a volunteer, courts must first engage in "a threshold inquiry" regarding that person's "expectation of compensation" before evaluating the economic reality of the relationship. *Acosta v. Cathedral Buffet, Inc.*, 887 F.3d 761, 766 (6th Cir. 2018); *see also Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947); *Alamo*, 471 U.S. at 302.

Here, Ferguson had an expectation of compensation in the form of MHC significantly subsidizing her rent and paying her utility bills. *See* ECF Nos. 23-7; 23-8. This regular compensation—worth at least hundreds of dollars each month—surely exceeds the kind of "nominal fee" contemplated by the labor regulations. *See* 29 C.F.R. § 553.106(e).

Despite the Sixth Circuit's characterization of the expectation of compensation being a "threshold inquiry," the Sixth Circuit has also held that the expectation of regular, substantial compensation *alone* may be dispositive of whether someone is a volunteer or employee. *See Mendel v. City of Gibraltar*, 727 F.3d 565, 570 n.6 (6th Cir. 2013) (finding that although employer who labeled plaintiffs as "volunteers" did not "control" the plaintiffs, the fact that the employer "paid substantial wages for [the plaintiffs'] work, means that [the plaintiffs] certainly fall within the broad scope of the FLSA's general definition of employees."). And here, Ferguson had such an expectation of substantial compensation, which certainly suggests she is not a volunteer, but an employee under the FLSA.

Even continuing beyond the "threshold inquiry" of whether Ferguson expected compensation, evaluation of the relevant *Brandel* factors[5]—permanence,

---

[5] The *Brandel* factors most commonly utilized by courts evaluating the economic realities of an employment relationship "deal[] with the distinction between employees and independent contractors" where "it is a foregone conclusion that the workers, whether employees or independent contractors, expect to receive

control, and integrality—also leads to the conclusion that Ferguson was not a volunteer, but an employee under the FLSA. Ferguson provided building monitor services to MHC continually for 12 years, during which MHC retained the right to fire Ferguson, suggesting a kind of permanence which weighs in favor of classifying Ferguson as an employee. *See Acosta v. Off Duty Police Servs.*, 915 F.3d at 1058–59 (noting that permanence evaluates both "the length and consistency of the relationship."). And although MHC did not control Ferguson's every move as building monitor, control alone is not dispositive. *See Mendel*, 727 F.3d at 570 n.6 (finding lack of control insufficient "to overcome the fact that [the plaintiffs] are paid substantial wages for performing work."). Finally, it appears the services Ferguson provided MHC were, to some degree, integral to MHC's operation of Vicksburg Hall. Indeed, nowhere in its motion or reply does MHC argue Ferguson's services were *not* integral. *See generally* ECF Nos. 23; 25. And though there are

---

compensation." *Acosta v. Cathedral Buffet*, 887 F.3d at 766. Thus, several of the factors are not useful in determining whether someone labeled a "volunteer" is actually an employee for FLSA purposes. *See Mendel v. City of Gibraltar*, 842 F. Supp. 2d 1035, 1042 (E.D. Mich. 2012), *rev'd on other grounds*, 727 F.3d 565 (6th Cir. 2013) (noting "many courts have found little guidance in [the economic realities test] when applying it to volunteers."). Thus, this Court will limit its analysis of the *Brandel* factors to only those that are useful in determining whether someone is a *volunteer* or an employee: (1) the permanence of the relationship between the parties; (2) the degree of the alleged employer's right to control the manner in which the work is performed; and (3) whether the service rendered is an integral part of the alleged employer's business. *Donovan v. Brandel*, 736 F.2d 1114, 1117 (6th Cir. 1984).

disputes about the exact parameters of Ferguson's duties, in the broadest sense, Ferguson provided services on evenings, weekends, and holidays so that MHC did not have to otherwise staff Vicksburg Hall. This also appears to exceed mere "periodic services" that would be performed by a volunteer. 29 C.F.R. § 553.106(e).

Quite simply, it appears she filled the role of an MHC employee when no other representatives of MHC were present. *See* ECF No. 24-4 at PageID.313 ("She did everything.").

At bottom, given the totality of the economic realities, Ferguson qualifies as an employee for FLSA purposes, despite MHC characterizing her as a volunteer. Thus, this Court will proceed to MHC's alternative bases for summary judgment.

### 2. Compensability of On-Call Time

MHC next argues that Count I must be dismissed because Ferguson was not on call, and even if she was, time spent on call is not compensable because she lived on the premises. ECF No. 23 at PageID.88.

### a. Standard

Under the FLSA, time spent on call, or waiting to work is not compensable if employees are "waiting to be engaged" rather than "engaged to wait." 29 C.F.R. § 785.14.

"In determining whether an employee is engaged to wait or waiting to be engaged, the critical inquiry is whether the time spent waiting is primarily for the

benefit of the employer or employee." *Bernal v. Trueblue, Inc.*, 730 F. Supp. 2d 736, 741 (W.D. Mich. 2010) (collecting cases); *see also* 29 C.F.R. § 785.17 ("An employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while 'on call'").

In determining whether waiting time is for the benefit of the employer or the employee, a district court must consider all circumstances of the case. *See Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944). Courts in the Sixth Circuit have considered the following four non-controlling and non-exhaustive factors: (1) whether the agreements and understandings between the employer and employee indicate that waiting time will be compensated; (2) whether the employer requested or required that the employee wait; (3) the extent to which an employee's free will is constrained during waiting time; and (4) the extent to which the employer actually benefits from the waiting time. *See, e.g.*, *Bernal*, 730 F. Supp. 2d at 741–44; *see also Leone v. H&B Land, Inc.*, No. 16-10557, 2017 WL 3278214, at *4 (E.D. Mich. Aug. 2, 2017); *Williams v. Alimar Sec., Inc.*, No. 13-12732, 2016 WL 1046889, at *7 (E.D. Mich. Mar. 16, 2016); *Dekker v. Construction Specialties of Zeeland, Inc.*, No. 1:11–CV–252, 2012 WL 726741, at *4 (W.D. Mich. Mar. 6, 2012).

### b. Analysis

The central inquiry here is whether Ferguson's time spent as building monitor

on evenings, weekends, and holidays, was primarily for her own benefit or the benefit of MHC under the four *Bernal* factors. *See* 730 F. Supp. 2d at 741.

In its motion for summary judgment, MHC focuses almost entirely on Ferguson's ability to "eat, watch television, socialize, sleep," and engage in other personal pursuits while on call. ECF No. 23 at PageID.92. But "[t]he ability to engage in personal activities is only *one* factor." *Farmer v. Whaley's Auto Repair & Towing Inc.*, No. 2:22-CV-02809-TLP-CGC, 2024 WL 2239012, at *4 (W.D. Tenn. Mar. 26, 2024) (emphasis added). And full consideration of the remaining three *Bernal* factors reveals that there are factual disputes that must first be resolved before this Court can determine whether Ferguson's on-call time was compensable.

***The agreements and understandings between employer and employee.*** The first *Bernal* factor is whether the agreements and understandings between the employer and employee indicate that waiting time will be compensated. *Bernal*, 730 F. Supp. 2d at 741. The April 2011 Agreement suggests that time spent waiting will not be compensated beyond the benefits identified in the agreement: the reduced, fixed-rate rent, free utilities, and free cell phone. *See* ECF No. 23-8. Thus, the first *Bernal* factor weighs in favor of finding that Ferguson's on-call time is not compensable.

***Requirement to wait.*** The second *Bernal* factor is whether the employer requested or required that the employee wait. *Bernal*, 730 F. Supp. 2d at 741.

Importantly, what MHC expected of Ferguson is disputed. On the one hand, PHHC employees testify that Ferguson was not required to wait. *See* ECF No. 23-2 at PageID.107 (asserting that building monitors were not *required* to be on site during specified hours). But, on the other hand, Ferguson testified that when she accepted the job in 2011, MHC employees required her to wait. *See* ECF No. 23-6 at PageID.156 (asserting building monitors were "required to be there all those hours.").

**Free will of employee.** The third *Bernal* factor is the extent to which the employee's free will is constrained while she is on call. *Bernal*, 730 F. Supp. 2d at 741. As briefly discussed above, the record is clear that Ferguson had significant freedom during her on call time. Although she was not allowed to leave Vicksburg Hall, she was able to do just about anything else she pleased within the confines of Vicksburg Hall—where she resided. Thus, this factor weighs slightly in favor of finding that Ferguson's on-call time is not compensable.

**Employer's benefit.** The fourth and final *Bernal* factor is the extent to which the employer actually benefits from the waiting time. *Id.* Full evaluation of this factor requires resolving the factual disputes about what Ferguson's duties as building monitor *actually were*. Were her duties limited to lockouts and pull-cord alerts, as PHHC employees say? *See* ECF No. 23-2 at PageID.107. Or were her duties, in fact, more expansive, as Ferguson testified that Pyden told her when she accepted the

role?[6] ECF No. 23-6 at PageID.154–55.

This Court cannot evaluate this factor without first resolving the evidentiary dispute about what Ferguson's duties were. But it appears at this juncture that Ferguson was "the only person available" for residents to go to with issues during the evenings, weekends, and holidays. *Farmer*, 2024 WL 2239012, at *4. This suggests Ferguson's availability to Vicksburg Hall residents for all manner of issues—if indeed part of her duties—was for the benefit of MHC. *See* ECF No. 23-9.

In sum, this Court cannot appropriately apply the *Bernal* test to determine whether Ferguson's on-call time is compensable before first resolving at least two factual disputes: (1) Whether MHC *required* Ferguson to wait, or merely *requested* that she wait; and (2) What Ferguson's duties as building monitor actually included. Thus, the Court will not grant summary judgement on Count I on this basis.

### 3. Offset of Alleged Unpaid Wages

Finally, MHC argues it is entitled to summary judgment on Count I because the 12 years of reduced rent it gave Ferguson "offsets any claim for unpaid wages." ECF No. 23 at PageID.93.

But analyzing the merits of this argument requires resolution of how much—

---

[6] On this point, the Court notes that the evidence produced on this issue falls into two categories: (1) evidence from 2011 which says one thing; and (2) evidence from 2021–22 which says something else. What is noticeably missing is evidence from the intervening *ten years*.

if any—of Ferguson's on-call time is compensable after resolution of several factual disputes. On this point, this Court notes that the current incomplete record suggests that it is unlikely that Ferguson was working "every hour" she was on call, but that perhaps "some of the work [she] performed while living [there]" might be compensable under the FLSA. *Myers v. Baltimore Cnty*, 50 F. App'x 583, 588 (4th Cir. 2002).

Thus, although Count I will survive summary judgment, MHC may raise this offset argument at trial if they so choose after necessary factfinding to determine how much, if any, of Ferguson's on-call time was compensable.

### B. Count II: FLSA Retaliation

Ferguson's second count alleges that MHC violated the FLSA by retaliating against her for filing a complaint with the state and federal departments of labor. ECF No. 1 at PageID.6. MHC argues it is entitled to summary judgment because the evidence demonstrates that no one at MHC knew Ferguson filed such complaints. ECF No. 23 at PageID.100.

### 1. Standard

Under the FLSA's anti-retaliation provision, an employer is prohibited from "discharging or in any manner discriminating against an employee because such employee has filed a complaint or instituted any proceeding under the FLSA." *Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006) (cleaned up); *see also*

29 U.S.C. § 215(a)(3).

To establish a prima facie case of retaliation under the FLSA, a plaintiff must show the following four elements:

(1) He or she engaged in a protected activity under the FLSA;
(2) His or her exercise of this right was known by the employer;
(3) Thereafter, the employer took an employment action adverse to the employee engaged in the protected activity; and
(4) There was a causal connection between the protected activity and the adverse employment action.

*Caudle v. Hard Drive Express, Inc.*, 91 F.4th 1233, 1237–38 (6th Cir. 2024) (citing *Adair*, 452 F.3d at 489).

"Under the *McDonnell Douglas* framework, which applies to FLSA retaliation claims, if the plaintiff establishes a prima facie case, 'the burden then shifts to the defendant to set forth a legitimate, non-discriminatory reason for the adverse employment action.' The plaintiff must then prove the defendant's proffered reasons were pretextual." *Caudle*, 91 F.4th at 1238 (quoting *Adair*, 452 F.3d at 589).

*2. Analysis*

Ferguson has not established a prima facie case of retaliation because she has not shown that anyone at MHC knew that she filed a complaint with state or federal labor departments in 2022. Both Dewey and Moses have testified that they did not know Ferguson had filed complaints with state and federal labor departments in 2022. ECF Nos. 23-2 at PageID.112; 23-3 at PageID.124. And Plaintiff's testimony that she does not know if she told anyone at MHC about her complaints is not enough

to create a question of fact to survive summary judgment on this claim. *See* ECF No. 23-6 at PageID.147 ("I don't know."). Instead, a plaintiff must produce non-speculative "evidence sufficient to establish that the individuals charged with taking the adverse employment action knew of the protected activity." *Mulhall v. Ashcroft*, 287 F.3d 543, 551–52 (6th Cir. 2002); *see also Crane v. Mary Free Bed Rehab. Hosp.*, 634 F. App'x 518, 526–27 (6th Cir. 2015) (holding that the plaintiff did not establish that a supervisor who took the adverse employment action knew of the protected activity when (1) the plaintiff only provided evidence that the supervisor talked with others who knew of the protected activity, (2) the plaintiff "presented no non-speculative evidence that" the supervisor know about the protected activity before taking the adverse action, and (3) the supervisor testified that she did not know of the protected activity.).

Here, Ferguson has produced *no* evidence to rebut Dewey's and Moses's testimony that they did not know of Ferguson's formal complaints, and merely speculates about their motivations for providing such testimony. *See* ECF No. 24 at PageID.273 ("Defendants have no reason to admit to receiving notice of Plaintiff's complaint to the Department of Labor."). Thus, because Ferguson "cannot point [to] any non-speculative evidence in the record as to when" her supervisor—let alone *anyone* at MHC—became aware of her complaints to the state and federal departments of labor, she may not prevail on her FLSA retaliation claim, so it must

be dismissed. *Carter v. City of Troy, Ohio*, 714 F. Supp. 3d 941, 959 (S.D. Ohio 2024) (dismissing ADEA retaliation claim because the plaintiff failed to provide evidence that his supervisor knew of plaintiff's EEOC complaint before taking any adverse employment action against the plaintiff).

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 23, is **GRANTED IN PART** to the extent that Count II will be dismissed with prejudice. Defendant's Motion, ECF No. 23, is **DENIED** in all other respects.

Further, it is **ORDERED** that Count II of Plaintiff's Complaint, ECF No. 1 at PageID.6, is **DISMISSED WITH PREJUDICE.**

**This is not a final order and does not close the above-captioned case.**

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: March 31, 2025